**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGELA THERESA VELASQUEZ-CHINGA,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, et al.,<br>Respondents. | Case No.: 3:26-cv-04176-RBM-KSC<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>**[Doc. 1]** |

Pending before the Court are Petitioner Angela Theresa Velasquez-Chinga's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 (Doc. 1) and Motion for Temporary Restraining Order ("TRO Motion") (Doc. 2). For the reasons set forth below, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner, a native of Ecuador, first came to the United States with her month-old son in 2016. (Doc. 1 at 2.) After her arrival, she was immediately released to apply for asylum. (*Id.*) "In 2022, all of [Petitioner's] asylum claims and appeals were denied and her order of removal became final." (*Id.*) Petitioner "remained released and checked in with ICE every six months." (*Id.*)

In November 2025, Petitioner was taken into custody by U.S. Immigration and

Customs Enforcement ("ICE") while attending a regular appointment. (*Id.*) Petitioner subsequently filed a habeas petition in District, which this Court granted on February 5, 2026. *See Velasquez-Chinga v. Noem*, 26-cv-105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026). For the past six months since her release, Petitioner "has worn a GPS ankle monitor, attended her appointments, and followed all conditions of supervision." (*Id.* at 2–3.)

"At the beginning of July, an immigration officer called [Petitioner] and told her she needed to come in for an appointment." (*Id.* at 3.) "The officer told her that, if he wanted to, he could detain her and make $1,000 because she wasn't supposed to be released." (*Id.*) Petitioner claims that the officer's statements made her "very nervous and [she] asked an immigration attorney to go with her to the check-in appointment." (*Id.*)

On July 9, 2026, Petitioner was re-detained while attending her check-in appointment. (*Id.*) Petitioner was not provided with "any written or oral notice of why she was being arrested," "chance to explain why her release should not be revoked," or any explanation of "what changed, if anything, to make her removal more likely." (*Id.*) The attorney who accompanied Petitioner "asked to see paperwork authorizing her detention, but they were unable to provide any." (*Id.*) Petitioner was subsequently transferred to the Otay Mesa Detention Center where she has been detained ever since. (*Id.*) Since then, Petitioner has not been given "any paperwork or a chance to explain why her supervision should not have been revoked" or any "information about her removal—when or even if it might happen." (*Id.*)

## II. <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit

judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner claims her continued immigration detention violated the Fifth Amendment's Due Process Clause, 8 U.S.C. § 1231, and the Supreme Court's ruling in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 4–9.) Respondents argue that the Court should deny the Petition because "Respondents complied with the regulatory requirements and ICE can schedule Petitioner's removal to Ecuador to occur on short notice." (Doc. 9 at 1.)

For the reasons discussed below, the Court finds that ICE violated Petitioner's due process rights in revoking Petitioner's release without complying with the applicable statutory and regulatory provisions that afford fundamental procedural safeguards to noncitizens.

### A. Agency Regulations

Petitioner claims her re-detention violates 8 C.F.R. § 241.13(i)(3) and the Fifth Amendment's Due Process Clause because ICE revoked her release under an Order of Supervision without providing adequate notice, an informal interview, or reasons for the revocation of her release. (Doc. 1 at 5–6.) Respondents contend that they "complied with the regulatory requirements when revoking" her Order of Supervision because Petitioner was provided with a Notice of Revocation of Release and an informal interview on July 9, 2026—the day she was re-detained—where she had the "opportunity to respond to the reasons for the revocation of her release." (Doc. 9 at 1–2, 5.)

It is well-established that government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (quoting *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)). This Court has joined the majority of district courts

and "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Azzo v. Noem*, Case No.: 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at *2 (S.D. Cal. Dec. 10, 2025) (quoting *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cal. 2025)) (collecting cases).

The detention, and release of noncitizens who have been ordered removed is governed by 8 U.S.C. § 1231. This statute directs the Attorney General of the United States to effect the removal of a noncitizen from this country "within a period of 90 days," also known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). It also authorizes the detention of a noncitizen during the removal period. § 1231(a)(2). Noncitizens who are inadmissible, such as due to a prior reentry after removal, "may be detained beyond the [90-day] removal period," but § 1231 does not mandate their detention. 8. U.S.C. § 1231(a)(6). Instead, the statute is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Where a noncitizen does not leave or is not removed within the 90-day removal period, the individual, "pending removal, shall be subject to supervision." 8. U.S.C. § 1231(a)(3).[1]

The regulations governing the release and revocation of release of noncitizens subject to a final order of removal are 8 C.F.R. §§ 241.4 and 241.13. Both regulations provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1).

---

[1] As such, Respondents' argument that Petitioner is subject to "mandatory" detention (Doc. 4 at 2), directly contradicts the Order of Supervision issued by DHS issued which permitted Petitioner's release subject to her compliance with certain conditions. (*See* Doc. 1-2, Ex. 1 at 5–7; *see also* Doc. 1-4, Ex. 3 at 17.)

These regulations " were intended 'to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.'" *Ghafouri v. Noem*, No. 3:25-CV-02675-RBM-BLM, 2025 WL 3085726, at *4 (S.D. Cal. Nov. 4, 2025) (quoting *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

In this case, as an attachment to their Response, Respondents filed the Notice of Revocation which it claims was provided to Petitioner on the day she was re-detained. (*See* Doc. 9-3, Ex. 1 at 2–4.) Petitioner maintains that she did not receive any such Notice but even she had, "it was insufficient to comply with ICE's own regulations." (Doc. 10 at 2.) The Court agrees.

The Notice of Revocation states that Petitioner's Order of Supervision was "revoked pursuant to 8 C.F.R. § 241.4(*l*) because her "conduct, or other circumstance indicates release is no longer appropriate." (Doc. 9-3, Ex. 1 at 2.) The Notice of Revocation specifies that Petitioner's release was no longer appropriate because: "Board of Immigration Appeals case was denied. Ninth Circuit Court of Appeals issued a mandate. Subject is a Final Order of Removal pending removal to Ecuador." (*Id.*) But as Petitioner correctly notes, "[a]ll of those circumstances existed on the date she received her [O]rder of [S]upervision." (Doc. 10 at 2.) In fact, Petitioner's removal order became final in January 2022. (*See* Doc. 9 at 2.)

In their Response, Respondents assert that "ICE already has in its possession a travel document for Petitioner's removal and has the ability and means to effectuate Petitioner's removal on a flight to Ecuador on short notice." (Doc. 9 at 5.) ICE could have indicated in the Notice of Revocation that Petitioner's release was revoked to "enforce the removal order entered against [her] as ICE has the ability and means to effectuate [her] removal," or that it was revoked based on another permissible reason set forth in 8 C.F.R. § 241.1(*l*)(2). (*See* Doc. 9-3, Ex. 1 at 2.) ICE, however, did not do so. Rather, Petitioner alarmingly claims that an immigration officer suggested "he could her detain" in exchange for monetary compensation. (Doc. 1 at 3, 6; *see* Doc. 1-2, Declaration of Angela Theresa

Velasquez-Chinga ["Velasquez-Chinga Decl."] ¶ 5.) The Court therefore finds that Petitioner was not provided with adequate notice of the reasons for revocation of her release. *See McSweeney v. Warden of Otay Mesa Det. Facility*, Case No. 3:25-cv 02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition where petitioner "could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons"); *see also Tan-Gutierrez v. Noem*, Case No.: 3:26-cv-00152-RBM-BJW, 2026 WL 194747, at *3 (S.D. Cal. Jan. 26, 2026) ("ICE's conclusory explanation for revoking Petitioner's release 'did not offer [her] adequate notice of the basis for the revocation decision such that [she] could meaningfully respond at the post-detention informal interview.'") (quoting *Diaz v. Wofford*, Case No. 1:25-CV-1079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025).

Additionally, there is no evidence that ICE determined Petitioner's removal was significantly likely in the reasonably foreseeable future based on any "changed circumstances." *See* 8 C.F.R. § 241.13(i)(2). As previously noted, Petitioner's removal order does not constitute a "changed circumstance[ ]" because the removal order became final over four years before Petitioner's re-detention. (*See* Doc. 9 at 2.) Respondents indicate that "[s]ince Petitioner's re-detention on July 9, 2026, ICE has worked diligently to effectuate her removal to Ecuador." (Doc. 9-1, Declaration of Daniel Negrin ["Negrin Decl."] ¶ 21.) But the record contains no evidence that such a determination was made by the appropriate official at any point *prior* to her re-detention. "[T]his post-hoc rationalization cannot form the basis of 'changed circumstances' for the purpose of re-detention." *Arostegui-Campo v. Noem*, Case No.: 25-CV-3064 JLS (MMP), 2025 WL 3280886, at *4 (S.D. Cal. Nov. 25, 2025) (collecting cases). The Court therefore finds the Government failed to comply with its own regulations. By failing to afford Petitioner the procedural safeguards the regulations were designed to protect, ICE deprived Petitioner of her due process rights and prejudiced her interests. *See Diaz*, 2025 WL 2581575, at *7 ("DHS's failure to follow its own procedural regulations may constitute a due process

violation.”); *M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (“ICE’s failure to provide Petitioner with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking [him] into custody is a grave violation of Petitioner’s due process rights in that they deprived [him] both of meaningful notice and an opportunity to be heard.”).[2]

## IV. CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 1) is **GRANTED**. Accordingly:

1. The Government is **ORDERED** to immediately release the noncitizen from custody, subject to her preexisting Order of Supervision.
2. The Government **SHALL NOT** re-detain the noncitizen under 8 U.S.C. § 1231(a)(6) unless and until the Government follows all applicable statutory and regulatory procedures.
3. The TRO Motion (Doc. 2) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE: August 31, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2] In light of the disposition herein, the Court declines to address the remaining grounds in the Petition for seeking release.